Robert E. Dunn (State Bar No. 275600)
Collin J. Vierra (State Bar No. 322720)
EIMER STAHL LLP
99 Almaden Blvd., Suite 600
San Jose, CA 95113
Telephone: (408) 889-1690
rdunn@eimerstahl.com
cvierra@eimerstahl.com

Daniel D. Birk (appearance *pro hac vice*)
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 600-7600
dbirk@eimerstahl.com

*Attorneys for Defendant Coinbase, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael Massel, individually and on behalf of others similarly situated, | Case No. 3:23-cv-02123-VC |
| Plaintiff, | **COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| Coinbase, Inc.; and DOES 1 through 10, inclusive; | Hon. Vince Chhabria |
| Defendants. | Hearing Date: Oct. 19, 2023<br>Hearing Time: 10:00 a.m.<br>Room: Courtroom 4 |

1

2       **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3           Please take notice that on October 19, 2023, at 10:00 a.m., or as soon thereafter as the matter

4   may be heard, in the courtroom of the Honorable Vince Chhabria, located in Courtroom 4, 17th Floor

5   of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant

6   Coinbase, Inc. ("Coinbase") will and hereby does move this Court to stay proceedings pending

7   individual arbitration of the claims of Plaintiff Michael Massel ("Plaintiff").

8           Coinbase makes this Motion under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"),

9   and Federal Rule of Civil Procedure 12(b)(1) based on Plaintiff's agreement to submit to individual

10  arbitration the claims asserted in this case. This Motion is based on this Notice of Motion, the following

11  Memorandum of Points and Authorities, the accompanying declarations of Suellen Black and Collin

12  Vierra and the exhibits attached thereto, the pleadings and other documents on file in this case, all other

13  matters of which the Court may take judicial notice, and any other argument or evidence that may be

14  received by the Court upon hearing of this Motion.

15

16

17

18

19

20

21

22

23

24

25

COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:23-cv-02123-VC

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 2

FACTUAL BACKGROUND ................................................................................................ 2

    I.    Plaintiff Agrees to Coinbase's 2018 User Agreement and Privacy Policy ..................... 2

    II.   Coinbase Amends the User Agreement in 2019, and Plaintiff Assents to the Updated Arbitration Agreement by Continuing to Use Coinbase's Service ................................. 4

    III.   Plaintiff Asserts Claims Against Coinbase in Court and Purports to Represent a Class. 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ..................................................................................................................... 6

    I.    Plaintiff's Claims Are Subject to Individual Arbitration Under the 2018 User Agreement ............................................................................................................... 6

        A.   Plaintiff and Coinbase Agreed to Resolve Disputes Through Final and Binding Individual Arbitration in the 2018 User Agreement. ................................. 7

        B.   The 2018 User Agreement Delegates Questions Regarding the Enforceability and Scope of the Arbitration Agreement to the Arbitrator. ............................. 8

        C.   The Arbitration Agreement Is Valid, Enforceable, and Encompasses Plaintiff's Claims ..................................................................................................... 10

    II.   Arbitration Is Also Required Under the Terms of the 2019 User Agreement .............. 14

        A.   Plaintiff and Coinbase Agreed to Resolve Disputes Through Final and Binding Individual Arbitration in the 2019 User Agreement. ................................. 14

        B.   The 2019 User Agreement Delegates Gateway Questions to the Arbitrator, Is Valid, Enforceable and Encompasses Plaintiff's Claims. .................................... 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

Aggarwal v. Coinbase, Inc.,
  2023 WL 4935003 (N.D. Cal. Aug. 2, 2023) ................................................................ 9, 10

Alfia v. Coinbase Global, Inc.,
  2022 WL 3205036 (N.D. Cal. July 22, 2022) .................................................................. Passim

AT&T Mobility LLC v. Concepcion,
  563 U.S. 333 (2011) ................................................................................................................ 11

AT&T Techs., Inc. v. Commc'ns Workers of Am.,
  475 U.S. 643 (1986) .................................................................................................................. 7

Bielski v. Coinbase, Inc.,
  2022 WL 1062049 (N.D. Cal. Apr. 8, 2022) .......................................................................... 10, 12

Brennan v. Opus Bank,
  796 F.3d 1125 (9th Cir. 2015) ................................................................................................... 8

Brice v. Haynes Invs., LLC,
  13 F.4th 823 (9th Cir. 2021) ...................................................................................................... 6

Carter v. Rent-A-Center, Inc.,
  718 F. App'x 502 (9th Cir. 2017) ............................................................................................. 11

DeVries v. Experian Info. Sols., Inc.,
  2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ............................................................................ 14

Donovan v. Coinbase Glob., Inc.,
  --- F.Supp.3d ---, 2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) ................................................ 9, 10

Flores v. Coinbase, Inc.,
  2023 WL 3564756 (C.D. Cal. Apr. 6, 2023) ............................................................................ Passim

Gerlach v. Tickmark Inc.,
  2021 WL 3191692 (N.D. Cal. July 28, 2021) ............................................................................ 8

Gilmer v. Interstate/Johnson Lane Corp.,
  500 U.S. 20 (1991) .................................................................................................................... 10

Goldman, Sachs & Co. v. City of Reno,
  747 F.3d 733 (9th Cir. 2014) ..................................................................................................... 7

Green Tree Fin. Corp.-Alabama v. Randolph,
  531 U.S. 79 (2000) .................................................................................................................... 11

Henry Schein, Inc. v. Archer & White Sales, Inc.,
  139 S. Ct. 524 (2019) ......................................................................................................... 6, 8, 9

Holl v. United Parcel Serv., Inc.,
  2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) ........................................................................ 6

Holley-Gallegly v. TA Operating, LLC,
  2023 WL 4674372 (9th Cir. July 21, 2023) ............................................................................. 9, 10

In re Facebook Biometric Info. Priv. Litig.,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................................................. 7, 14

Kattula v. Coinbase Global, Inc.,
  2023 WL 4373385 (N.D. Ga. July 6, 2023) ........................................................................ 10, 11, 12

Khalatian v. Prime Time Shuttle, Inc.,
  237 Cal. App. 4th 651 (2015) ................................................................................................... 13

Levin v. Caviar, Inc.,
  146 F. Supp. 3d 1146 (N.D. Cal. 2015) .................................................................................... 7

Lifescan, Inc. v. Premier Diabetic Servs., Inc.,

ii

363 F.3d 1010 (9th Cir. 2004) ............................................................................ 6
*Mahmoud v. Coinbase, Inc.*,
2022 WL 18799657 (Cal. Super. Oct. 19, 2022) ................................................ 10
*Matera v. Google, Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .................................................... 14
*McLellan v. Fitbit, Inc.*,
2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ...................................................... 8
*McLellan v. Fitbit, Inc.*,
2018 WL 1913832 (N.D. Cal. Jan. 24, 2018) ...................................................... 7
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .............................................................................................. 10
*MySpace, Inc. v. The Globe.com, Inc.*,
2007 WL 1686966 (C.D. Cal. Feb. 27, 2007) .................................................... 14
*Neurosigma, Inc. v. De Salles*,
2014 WL 12803168 (C.D. Cal. Jan. 31, 2014) ................................................... 13
*Nghiem v. NEC Elec., Inc.*,
25 F.3d 1437 (9th Cir. 1994) ............................................................................... 7
*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ............................................................................. 8
*Pearl v. Coinbase Glob., Inc.*,
2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ................................................... 9, 10
*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ....................................................................................... 11
*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ........................................................................................... 6, 9
*Savetsky v. Pre-Paid Legal Servs., Inc.*,
2015 WL 604767 (N.D. Cal. Feb. 12, 2015) ....................................................... 7
*Serpa v. Cal. Sur. Investigations, Inc.*,
215 Cal. App. 4th 695 (2013) ............................................................................. 12
*Shearson/Am. Exp., Inc. v. McMahon*,
482 U.S. 220 (1987) ........................................................................................... 10
*Tarvirdi v. Coinbase Global, Inc.*,
No. 22STCV24622 (Los Angeles Super. Ct. Mar. 10, 2023) ............................. 10
*Tracer Rsch. Corp. v. Nat'l Env't. Servs. Co.*,
42 F.3d 1292 (9th Cir. 1994) ............................................................................. 13
*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ............................................................................................. 6

**Statutes**

9 U.S.C. § 2 .............................................................................................. 6, 7, 10, 11
9 U.S.C. § 3 ......................................................................................................... 6
740 ILCS § 14/15(a) ............................................................................................ 5
740 ILCS § 14/15(b) ............................................................................................ 5
740 ILCS § 14/15(c) ......................................................................................... 5, 14
740 ILCS § 14/15(d) ......................................................................................... 5, 14

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff alleges that Coinbase, Inc. violated several provisions of Illinois' Biometric Information Privacy Act ("BIPA") by unlawfully collecting, using, and selling his biometric data. In addition to asserting his own claims, Plaintiff seeks to represent a class of all similarly situated individuals. But this Court cannot address any of these claims—and certainly not on a class-wide basis—because Plaintiff agreed to arbitrate all such disputes on an individual basis.

Plaintiff agreed to Coinbase's User Agreement when he opened his account in 2018. In doing so, Plaintiff made three commitments relative to this motion: (1) he would arbitrate "any dispute arising out of or relating to this Agreement or the Coinbase Services, including without limitation federal and state statutory claims"; (2) any "disputes arising out or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement" would be delegated to an arbitrator; and (3) he "waiv[ed] the right to a trial by jury and [the] right to participate in a class action." Decl. of Suellen Black ("Black Decl."), Ex. 2 § 7.2.

Plaintiff assented to an updated User Agreement in 2019 (the "2019 User Agreement"), when he continued to use Coinbase's service after Coinbase personally notified him of the update. The 2019 User Agreement similarly referred all disputes arising out of or related to the User Agreement or Coinbase Services to arbitration, contained the same broad delegation provision as the 2018 User Agreement, and expressly waived the right to trial by jury or to participate in a class action. *Id.*, Ex. 5 § 8.3 (emphasis added).

This Court should stay this case pending arbitration based on the 2018 User Agreement. As another judge in this district recently concluded, a user who "click[ed] a 'check box' next to the language ' . . . I agree to the User Agreement and Privacy Policy" has "entered into a binding arbitration agreement" with Coinbase that is enforceable and that "encompasses" any claims that "relate to

[Coinbase's] provision of Coinbase services through [that user's] Coinbase account." *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, at *2–3 (N.D. Cal. July 22, 2022). Plaintiff checked that box when registering his account. Given the delegation provision, all other gateway questions of arbitrability are for the arbitrator to decide, not this Court. But even if the Court were to decide the scope and enforceability issues itself, Plaintiff's claims that Coinbase improperly collected, used, and shared his biometric information plainly relate to the provision of Coinbase services and the 2018 User Agreement, which incorporated Coinbase's privacy policy governing the collection and use of biometric information.

To the extent Claimant argues that the 2019 User Agreement governs, the result would be the same. Simply put, both User Agreements to which Plaintiff expressly agreed require Plaintiff to individually arbitrate his claims, including any claims regarding the enforceability of the arbitration clause. This action should be stayed pending such arbitration.

## STATEMENT OF ISSUES TO BE DECIDED

(1) Whether Plaintiff entered into an arbitration agreement with Coinbase;

(2) Whether questions regarding the arbitrability of Plaintiff's claims under the agreement must be decided by the arbitrator;

(3) If the Court decides that questions of arbitrability are for the Court (not the arbitrator) to decide, whether the arbitration agreement is enforceable and whether Plaintiff's claims fall within the scope of the agreement.

## FACTUAL BACKGROUND

### I. Plaintiff Agrees to Coinbase's 2018 User Agreement and Privacy Policy

Coinbase operates an online platform for buying, selling, and transferring cryptocurrencies. Black Decl. ¶ 3. To access Coinbase's platform, prospective users are required to create a Coinbase account and to accept the Coinbase User Agreement. *Id.* ¶ 7. The "Coinbase Services" available to account holders include "Digital Currency wallets that allow users to store certain supported digital currencies, and to track, transfer, and manage supported Digital Currencies"; "Digital Currency

conversion services through which users can buy and sell Digital Currencies in transactions with Coinbase"; and "a U.S. Dollar account for use in connection with other Coinbase Services." *Id.*, Ex. 2 § 1.2.

The 2018 User Agreement expressly incorporated Coinbase's Privacy Policy. *Id.*, Ex. 2, Introduction, §§ 1.3, 8.4, Appx. 4; *see also id.*, Ex. 3. The Privacy Policy "describes [Coinbase's] information handling practices" when a user accesses Coinbase's "website located at coinbase.com and pro.coinbase.com, or any other websites, pages, features, or content we own or operate," or "use[s] the Coinbase mobile app, any Coinbase or GDAX API or third party applications relying on such an API, and related services." *Id.,* Ex. 3. Among other things, the Privacy Policy describes the information Coinbase collects; how that information is collected, used, retained, and protected; how that information is obtained from and/or shared with third parties; and how the user can exercise various rights with respect to his or her data. *Id.*

To create a Coinbase account in 2018, users were required to click a "check box" next to language reading: "I certify that I am 18 years of age or older, and I agree to the User Agreement and Privacy Policy." Black Decl. ¶ 8. Both the 2018 User Agreement and the Privacy Policy were accessible via hyperlinks. *Id.* ¶¶ 8, 14–15. The Privacy Policy informed prospective users that "[b]y accessing and using [Coinbase's] Services, [they] signify acceptance to the terms of th[e] Privacy Policy" and that Coinbase would ask for "consent to the collection, use, and disclosure of [their] personal information . . . ." *Id.* ¶ 12; *id.*, Ex. 3. It further notified prospective users that if they did "not agree with or [were] not comfortable with any aspect of th[e] Privacy Policy," their sole and exclusive remedy was to "immediately discontinue access or use of [Coinbase's] services." *Id.*, Ex. 3.

Plaintiff created his account and accepted the Coinbase User Agreement and Privacy Policy on November 28, 2018. Black Decl. ¶ 10; *id.*, Ex. 1. The User Agreement that Plaintiff accepted contained a broad arbitration agreement under which Plaintiff agreed to resolve disputes with Coinbase through

binding arbitration on an individual, non-class basis. Black Decl. ¶ 10; *id.*, Ex. 2 § 7.2 ("2018 User Agreement"). That arbitration agreement, titled "Arbitration; Waiver of Class Action." reads in relevant part:

> If you have a dispute with Coinbase, you agree to contact Coinbase through our support team to attempt to resolve any such dispute amicably. If we cannot resolve the dispute through the Coinbase support team, you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved through binding arbitration, on an individual basis . . . . [and] you and Coinbase are each waiving the right to a trial by jury and the right to participate in a class action.

*Id.* (emphasis removed). The arbitration provision expressly incorporated the AAA's rules. Black Decl. Ex. 2 § 7.2. It also contained a broad delegation provision that referred, "without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement," to an "arbitrator." *Id.*

## II.    Coinbase Amends the User Agreement in 2019, and Plaintiff Assents to the Updated Arbitration Agreement by Continuing to Use Coinbase's Service

From time to time, Coinbase updates its User Agreement and Privacy Policy. Black Decl., Ex. 2 § 8.5 ("We may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time."). On December 27, 2018, Coinbase sent an email to Plaintiff notifying him that it was updating its User Agreement. *Id.* ¶¶ 13–16; *id.*, Ex. 4. That email contained hyperlinks to (i) the Updated User Agreement, (ii) the then-current User Agreement, (iii) a summary of changes to the User Agreement, and (iv) the Privacy Policy. *Id.* ¶ 15.

The User Agreement in effect as of January 31, 2019, included a Formal Complaint Process to amicably resolve disputes internally, and provided that "[i]f we cannot resolve the dispute through the Formal Complaint Process, you and we agree that any dispute arising out of or relating to this Agreement

or the Coinbase Services . . .  shall be resolved through binding arbitration, on an individual basis . . . [and] you and Coinbase are each waiving the right to a trial by jury and the right to participate in a class action. *Id.*, Ex. 5 § 8.3 ("2019 User Agreement" or "User Agreement"). The 2019 User Agreement contained the same broad delegation provision as the 2018 User Agreement and incorporated Coinbase's Privacy Policy. *Id.*; *see also id.*, Ex. 5 §§ 1.4, 3.8, 6.1, 9.4, Appx. 2.

Plaintiff did not terminate his use of Coinbase services or close his account after receiving the email from Coinbase alerting him that the amendments to the User Agreement would take effect on January 31, 2019. Instead, Plaintiff continued to use Coinbase's services, making a transaction on February 26, 2019. Black Decl. ¶ 17.

### III.    Plaintiff Asserts Claims Against Coinbase in Court and Purports to Represent a Class

Notwithstanding his agreement to submit any dispute with Coinbase to individual arbitration, Plaintiff filed a complaint against Coinbase in this Court asserting claims under BIPA, 740 ILCS § 14/15(a)–(d). Moreover, despite agreeing not to pursue litigation (or arbitration) on a class-wide or collective basis, Plaintiff attempts to plead this case as a class action. Comp. ¶¶ 19, 53–62. Plaintiff alleges that he "opened a Coinbase account within the five years immediately preceding the filing of this matter" and "[a]s part of signing up, and/or gaining access to his Coinbase account, [] was required to" provide biometric information. *Id.* ¶¶ 2–3, 6. Plaintiff alleges that Coinbase "had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information," *id.* ¶ 34; "failed to permanently destroy Plaintiff's [biometric information]," *id.* ¶¶ 37, 39; "collected, stored, and used Plaintiff's biometric information without ever receiving a written release," *id.* ¶¶ 45–46; "sold, leased, traded, or otherwise profited from Plaintiff's biometric information," *id.* ¶ 47; and "disclosed, redisclosed, or otherwise disseminated Plaintiffs' biometric information," *id.* ¶¶ 50–51.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that if an issue referable to arbitration under an agreement to arbitrate is brought in federal court, the court must stay the federal action on application of one of the parties, pending completion of arbitration proceedings. 9 U.S.C. § 3; *see also Holl v. United Parcel Serv., Inc.*, 2017 WL 11520143, at *3 (N.D. Cal. Sept. 18, 2017) ("courts are required to stay judicial proceedings and compel arbitration of claims covered by an enforceable arbitration agreement"). The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When a party moves for a stay pending arbitration, the court typically must determine two gateway issues: (1) "whether a valid arbitration agreement exists," and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Any ambiguities relating to the scope of the arbitration agreement must be resolved in favor of arbitration. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). The parties to an arbitration agreement may further agree to arbitrate these gateway issues, however, so long as the delegation is "clear and unmistakable." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010); *see also Henry Schein*, 139 S. Ct. at 530. "Where a delegation provision exists," the court's focus is "on the enforceability of that specific provision, not the enforceability of the arbitration agreement as a whole." *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 827 (9th Cir. 2021).

**ARGUMENT**

**I.    Plaintiff's Claims Are Subject to Individual Arbitration Under the 2018 User Agreement.**

The Court should stay these proceedings pending arbitration because Plaintiff agreed to the terms of the 2018 User Agreement. The 2018 User Agreement clearly and unmistakably delegated questions regarding the enforceability and scope of the arbitration agreement to an arbitrator. But if the Court

nevertheless decides to resolve those issues, it should hold that (1) the arbitration agreement is valid, and (2) the arbitration agreement encompasses Plaintiff's claims.

### A. Plaintiff and Coinbase Agreed to Resolve Disputes Through Final and Binding Individual Arbitration in the 2018 User Agreement.

"[A]rbitration is a matter of contract," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and courts apply "general state-law principles of contract interpretation" to determine whether an agreement to arbitrate exists, *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted).[1] An arbitration agreement need only be in writing, and no signature by either party is necessary. *See* FAA, 9 U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994). Courts applying California law "routinely find [clickwrap agreements] valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018); *see also Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016); *Savetsky v. Pre-Paid Legal Servs., Inc.*, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015).

Here, Plaintiff assented to the 2018 User Agreement when he opened his account with Coinbase by affirmatively clicking the "check box" stating, "I agree to the User Agreement and Privacy Policy." Black Decl. ¶ 8. As a court in this district has already determined, when a user is presented with a 'clickwrap' agreement, checking a box manifesting consent is sufficient to create a binding arbitration agreement between Coinbase and the user. *Alfia*, 2022 WL 3205036, at *2 ("Plaintiff's assent was similar to a 'clickwrap' agreement," and he "had clear notice of the terms of the [Coinbase] User Agreement and took physical action to manifest his assent"); *see also Flores v. Coinbase, Inc.*, 2023

---

[1] The 2018 User Agreement contains a "Governing Law" provision stating that California law governs the User Agreement "and any claim or dispute that has arisen or may arise between you and Coinbase, except to the extent governed by federal law." Black Decl., Ex. 2 § 8.10. Therefore, the question of whether an agreement to arbitrate exists is governed by California law.

WL 3564756, at *3 (C.D. Cal. Apr. 6, 2023) ("Plaintiff assented to the 2022 User Agreement [with Coinbase] by affirmatively clicking the blue button indicating his acceptance of the agreement."). Accordingly, Coinbase and the Plaintiff "entered into a binding arbitration agreement" when Plaintiff clicked the box stating that "he agreed to the User Agreement." *Alfia*, 2022 WL 3205036, at *2.

> **B.** **The 2018 User Agreement Delegates Questions Regarding the Enforceability and Scope of the Arbitration Agreement to the Arbitrator.**

Parties to an arbitration agreement "may delegate 'gateway' questions of arbitrability to an arbitrator." *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017). Courts will enforce such a delegation provision "when it manifests a clear and unmistakable agreement to arbitrate arbitrability." *Id.* Where "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein,* 139 S. Ct. at 528. Even where there is no delegation provision in the arbitration agreement, courts have routinely held that incorporation of an arbitral forum's rules into an arbitration agreement provides "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (citing cases). "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). The same rule applies to consumer arbitration provisions. *See, e.g.*, *Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) (applying *Brennan* to a consumer arbitration provision).

The 2018 User Agreement contains an express delegation provision that "manifests a clear and unmistakable agreement" to delegate the gateway question of arbitrability to an arbitrator. *McLellan*, 2017 WL 4551484, at *1. It provides that all "disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . . shall be decided by an

8

COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:23-cv-02123-VC

arbitrator and not by a court or judge." Black Decl., Ex. 2 § 7.2. This delegation provision unmistakably delegates arbitrability questions to an arbitrator, not to this Court. *See Flores*, 2023 WL 3564756, at *5 (interpreting Coinbase's 2022 User Agreement, which contains the same delegation provision, and concluding that "the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator"); *Aggarwal v. Coinbase, Inc.*, 2023 WL 4935003, at *6 (N.D. Cal. Aug. 2, 2023) (same); *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *3–4 (N.D. Cal. Feb. 3, 2023) (same); *Donovan v. Coinbase Glob., Inc.*, --- F.Supp.3d ---, 2023 WL 2124776, at *5 (N.D. Cal. Jan. 6, 2023) (same).

Moreover, the 2018 User Agreement expressly incorporates the AAA's rules, Black Decl., Ex. 2 § 7.2; *id.*, Ex. 5 § 8.3, which independently "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Flores*, 2023 WL 3564756, at *5. Most relevant here, AAA Rule 14(a) states that the arbitrator has "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Vierra Decl. ¶ 3 & Ex. 1, at R-14(a). The incorporation of the AAA rules in the 2018 User Agreement thus further confirms that the parties intended to delegate gateway arbitrability issues, including the "existence, scope, or validity" of the arbitration provision in the 2018 User Agreement, to the arbitrator.

Because the parties have demonstrated their "clear and unmistakable" intention to arbitrate any question as to arbitrability, *Rent-A-Center*, 561 U.S. at 69 n.1, this Court "must respect the parties' decision as embodied" in the 2018 User Agreement and enforce the delegation provision so long as it is not substantively unconscionable. *Henry Schein*, 139 S. Ct. at 528. As the Supreme Court and Ninth Circuit have recognized, "delegation clauses are essentially severable mini-agreements within agreements to arbitrate." *Holley-Gallegly v. TA Operating, LLC*, ---F.4th---, 2023 WL 4674372, at *3 (9th Cir. July 21, 2023) (citing *Rent-A-Center*, 561 U.S. at 70–73). There is nothing in Coinbase's delegation provision that would render it substantively unconscionable, as several courts have recently

held. *See Donovan*, 2023 WL 2124776, at *5; *Pearl*, 2023 WL 1769190, at *7; *Kattula v. Coinbase Global, Inc.*, 2023 WL 4373385, at *5–6 (N.D. Ga. July 6, 2023); *Aggarwal*, 2023 WL 4935003, at *9–10; *Flores*, 2023 WL 3564756, at *7; *Mahmoud v. Coinbase, Inc.*, 2022 WL 18799657 (Cal. Super. Oct. 19, 2022); *Tarvirdi v. Coinbase Global, Inc.*, No. 22STCV24622 (Los Angeles Super. Ct. Mar. 10, 2023), attached as Exhibit 2 to Vierra Decl.[2]

### C.    The Arbitration Agreement Is Valid, Enforceable, and Encompasses Plaintiff's Claims.

Even if the Court declines to enforce the parties' delegation agreement, it should nevertheless compel arbitration because (1) the 2018 User Agreement is valid and enforceable, and (2) Plaintiffs' claims fall squarely within the scope of that agreement.

### 1.    The User Agreement Is Presumptively Valid and Enforceable.

Arbitration agreements governed by the FAA are presumed valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 225–26 (1987). This reflects Congress's intent to reverse longstanding judicial hostility toward arbitration and evinces a "liberal federal policy favoring arbitration agreements." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA therefore mandates enforcement of an arbitration agreement unless grounds exist "at law or in

---

[2] In *Bielski v. Coinbase, Inc.*, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022), Judge Alsup declined to enforce the delegation provision in Coinbase's 2021 User Agreement because he concluded that the "delegation clause imposes no requirements on Coinbase," and that it thus "lacks the requisite modicum of bilaterality." *Id.* at *5. That decision, which is currently on appeal, is incorrect because the delegation provision applies "without limitation" to *all* threshold arbitrability questions. Black Decl., Ex. 2 § 7.2. Moreover, Judge Alsup's finding of no mutuality was based on *other provisions* in the 2021 User Agreement—not the delegation provision—but even if those provisions rendered the user agreement itself unconscionable (which they do not, *see infra* § II.B) they have no "bearing on whether the delegation of arbitrability to the arbitrator would be unconscionable." *Holley-Gallegly*, ---F.4th---, 2023 WL 4674372, at *5. Since *Bielski*, seven courts—*Aggarwal*, *Kattula*, *Flores*, *Donavan*, *Pearl*, *Mahmoud*, and *Tarvirdi*—have considered Coinbase arbitration motions. All of them have enforced the delegation provision and referred the claims, including gateway arbitrability questions, to the arbitrator.

10

equity for the revocation of any contract." 9 U.S.C. § 2. The plaintiff bears the burden to overcome the presumption of validity by showing that the agreement is unconscionable. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). To be "substantively unconscionable," an arbitration "term must be so one-sided as to shock the conscience." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012).

Plaintiff cannot meet that burden. Two judges applying California law have recently found similar Coinbase user agreements to be valid and enforceable. *Alfia*, 2022 WL 3205036, at *3–4; *Kattula*, 2023 WL 4373385, at *5–6. The plaintiffs in *Alfia* argued that the arbitration provision in their agreements was substantively unconscionable because "it prohibits class-wide claims" and allegedly "provides relatively greater benefit to Coinbase" than to its users. *Id.* at *4. The court rejected both arguments. First, the court recognized that "[t]he Supreme Court has affirmed the enforceability of class-action waivers." *Id.*; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Carter v. Rent-A-Center, Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (interpreting "*Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver"). Second, the court held that the arbitration "provision binds both parties to arbitrate designated claims" and thus does not generate overly harsh or one-sided results. *Alfia*, 2022 WL 3205036, at *4. The court in *Kattula* similarly concluded that Coinbase's arbitration provision did "not lack mutuality" because it provided that "all disputes between the user and Coinbase 'will be resolved by binding arbitration.'" 2023 WL 4373385, at *5. The 2018 User Agreement, which is materially identical to those addressed in *Alfia* and *Kattula*, binds both users *and* Coinbase to arbitrate their claims, and, further, stipulates that both the user "and Coinbase are each waiving the right to a trial by jury and the right to participate in a class action." Black Decl., Ex. 2 § 7.2. The provision is thus not "one-sided."

Nor is there anything unconscionable about requiring the parties to "attempt to resolve any []

dispute amicably" before initiating arbitration. *Id.* On the contrary, "a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate." *Kattula*, 2023 WL 4373385, at *5 (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013)). This process, "which permits Coinbase an opportunity to fix customers['] problems before resorting to slower and more expensive arbitration, is not substantively unconscionable." *Flores*, 2023 WL 3564756, at *6.[3]

### 2.    Plaintiff's Claims Fall Within the Scope of the Arbitration Clause.

The scope of the arbitration agreement here is extremely broad—Plaintiffs and Coinbase agreed to arbitrate "any dispute arising out of or relating to th[e] [2018 User] Agreement **or** the Coinbase Services . . . ." Black Decl., Ex. 2 § 7.2 (emphasis added). To access "Coinbase Services," the user must register his account, *id.* § 2.1, and verify his identity, *id.* § 2.2. Plaintiff expressly and repeatedly alleges that he provided Coinbase with his personal data "[a]s part of signing up, and/or gaining access to his Coinbase account," including so that Coinbase could "verify [Plaintiff's] identit[y] when logging into the mobile app." Compl. ¶¶ 3, 6–7, 28, 30–33, 35, 42, 67, 76. Because Plaintiff claims that Coinbase violated BIPA by misusing the information he provided when signing up and logging into his account, *id.* ¶¶ 63–92, his claims plainly "relate to Defendant's provision of Coinbase services through his

---

[3] In *Bielski*, Judge Alsup concluded that Coinbase's 2021 User Agreement is substantively unconscionable because it supposedly "impose[d] no obligation on Coinbase to arbitrate." 2022 WL 1062049, at *4. That decision (which was incorrect) is distinguishable because the court concluded that the Formal Complaint Process in that agreement "only contemplate[d] complaints raised by the consumer, not by Coinbase," and the arbitration agreement purportedly "addresse[d] only those disputes that have previously gone through the pre-arbitration complaint procedure." *Id.* That reading of Coinbase's arbitration agreement is incorrect for the reasons Coinbase has explained on appeal. Regardless, the arbitration agreement here is different. In contrast to the 2021 User Agreement, the 2018 User Agreement that Plaintiff agreed to when he opened his account does *not* require—or even reference—a Formal Complaint Process. Black Decl., Ex. 2 § 7.2. As courts have recognized, the concern that animated *Bielski* is not present where the operative user agreement "does not precondition arbitration on resolution of the dispute through the 'Formal Complaint Process.'" *Kattula*, 2023 WL 4373385, at *5 (distinguishing the 2022 User Agreement from the 2021 agreement at issue in *Bielski*).

---

12

COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:23-cv-02123-VC

Coinbase account." *Alfia*, 2022 WL 3205036, at *3. "[T]he arbitration agreement therefore encompasses the dispute." *Id.*

Plaintiff's four BIPA claims also arise out of both the 2018 User Agreement and the incorporated Privacy Policy. Claims "arise[] under" a contractual provision when they "relat[e] to the interpretation and performance of the contract itself." *Tracer Rsch. Corp. v. Nat'l Env't. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (citation omitted). "An agreement that requires the parties to arbitrate 'any dispute arising out of or relating to' an agreement is intended 'to reach all aspects of their relationship.'" *Neurosigma, Inc. v. De Salles*, 2014 WL 12803168, at *3 (C.D. Cal. Jan. 31, 2014) (internal citation omitted); *Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal. App. 4th 651, 660 (2015) ("Broad arbitration clauses . . . are consistently interpreted as applying to extracontractual disputes between the contracting parties.").

Here, Plaintiff's first claim alleges that Coinbase collected Plaintiff's data without an adequate written policy "establishing a retention schedule and guidelines for permanently destroying [data]," and that Coinbase failed to timely destroy Plaintiff's data. The 2018 User Agreement expressly provides that Plaintiff may be required to provide Coinbase with "personal information," Black Decl., Ex. 2 § 2.2, and Coinbase's Privacy Policy explains that Coinbase will "retain [Plaintiff's] personal information" under certain circumstances and that Plaintiff may request "erasure" of his personal information, *id.*, Ex. 3. Plaintiff's first claim is thus an attack on the adequacy of Coinbase's Privacy Policy under Illinois law and thus "aris[es] out of or relates to" the 2018 User Agreement and the incorporated Privacy Policy.

Plaintiff's second claim alleges that Coinbase failed to inform him that Coinbase was collecting or storing his data and did not inform him of the specific purpose and length of term for which his data was being collected, stored, and used. The 2018 User Agreement and Privacy Policy both disclose in writing not only that Coinbase would collect and use Plaintiff's data, but also the purposes for which it would do so, including for identity verification. Black Decl., Ex. 2 § 2.2, Appx. 2; *id.*, Ex. 3; *see also*

13

COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:23-cv-02123-VC

*id.* Ex. 5 §§ 1.4, 3.8, Appx. 2. Plaintiff's second claim therefore also amounts to an attack on the adequacy of Coinbase's Privacy Policy under Illinois law.

And Plaintiff's third and fourth claims allege that Coinbase unlawfully sold, leased, traded, or otherwise profited from his data, and disclosed his data to third parties. In addition to the above, the 2018 User Agreement and Privacy Policy describe the circumstances under which Plaintiff's information may be shared with third parties. *E.g.*, Black Decl., Ex. 3. To resolve those claims, the adjudicator will have to determine whether Coinbase's 2018 User Agreement and Privacy Policy accord with Illinois law, 740 ILCS §§ 14/15(c), (d). Thus, these causes of action similarly "aris[e] out of or relate to" the 2018 User Agreement and Privacy Policy.

## II.    Arbitration Is Also Required Under the Terms of the 2019 User Agreement

Coinbase's motion should be resolved by reference to the 2018 User Agreement, but the result would be the same under the 2019 User Agreement because (1) Plaintiff assented to that agreement by continuing to use Coinbase Services after being informed of the update; (2) the agreement delegates gateway questions of arbitrability to the arbitrator; (3) the agreement is enforceable; and (4) Plaintiff's claims arise out of or relate to Coinbase Services and the 2019 User Agreement and Privacy Policy.

### A.    Plaintiff and Coinbase Agreed to Resolve Disputes Through Final and Binding Individual Arbitration in the 2019 User Agreement.

Courts have routinely held that continued use of an internet-based service is sufficient to evidence assent where the provider clearly notified its users that it reserved the right to modify the terms of service at any time and informed users that they should stop using the service if they disagreed with the updated terms of service. *See Matera v. Google, Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016), *In re Facebook Biometric Info.*, 185 F. Supp. 3d at 1167; *see also DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *7 (N.D. Cal. Feb. 24, 2017); *MySpace, Inc. v. The Globe.com, Inc.*, 2007 WL 1686966, at *10 (C.D. Cal. Feb. 27, 2007). In short, agreement can be inferred if (1) the user is alerted when first signing up for the service that the terms of service may be modified at any time, (2)

14

COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING ARBITRATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:23-cv-02123-VC

the user is subsequently notified of a change in the terms of service, and (3) the user continues using the service after the notification. All three conditions are satisfied here.

When Plaintiff accepted the 2018 User Agreement, he confirmed that he assented to be bound by that agreement and all of its terms. Black Decl., Ex. 2, Introduction & Appx. 2. These included a change-in-terms provision, which permitted Coinbase to "amend or modify th[e] [User] Agreement by posting on the Coinbase Site or emailing to [Plaintiff] the revised [User] Agreement." *Id.* Ex. 2 § 8.5. Plaintiff's "sole and exclusive remedy" if he did "not agree with any such modification" was "to terminate [his] use of the Services and close [his] account." *Id.* Coinbase invoked this clause on December 27, 2018, when it emailed Plaintiff notifying him that it was updating its user agreement effective January 31, 2019. *Id.* ¶¶ 14–15; *id.*, Ex. 4. Coinbase also posted the updated agreement on its website. *Id.* ¶ 14. After receiving this notice, Plaintiff did not close his account but instead used his Coinbase account on February 26, 2019, to purchase cryptocurrency. *Id.* ¶ 17.

> **B.    The 2019 User Agreement Delegates Gateway Questions to the Arbitrator, Is Valid, Enforceable and Encompasses Plaintiff's Claims.**

The 2019 User Agreement contains an express delegation clause identical to the 2018 User Agreement. *See* Black Decl., Ex. 5 § 8.3. It also incorporates the AAA Consumer Arbitration Rules into the agreement, further confirming that the arbitrator has the power to address gateway arbitrability issues. *See supra* § I.B. Thus, regardless of which user agreement applies, the Court should grant Coinbase's motion, refer all gateway arbitrability questions to the arbitrator, and stay the case pending arbitration. In all events, the 2019 User Agreement is enforceable, and Plaintiffs' claims are within the scope of the 2019 User Agreement. *See supra* § I.C.2; Black Decl., Ex. 5 §§ 8.3, Preamble; *see also id.* Ex. 5 § 9.4.

> ### CONCLUSION

For the foregoing reasons, Coinbase respectfully requests that the Court stay proceedings pending arbitration of Plaintiffs' claims.

Dated: August 4, 2023                         **EIMER STAHL LLP**

                                    By:  /s/ *Robert E. Dunn*

                                         Robert E. Dunn (State Bar No. 275600)
                                         Collin J. Vierra (State Bar No. 322720)
                                         EIMER STAHL LLP
                                         99 Almaden Blvd., Suite 600
                                         San Jose, CA  95113
                                         Telephone: (408) 889-1690
                                         rdunn@eimerstahl.com
                                         cvierra@eimerstahl.com

                                         Daniel D. Birk (appearance *pro hac vice*)
                                         EIMER STAHL LLP
                                         224 S. Michigan Ave., Suite 1100
                                         Chicago, IL 60604
                                         Telephone: (312) 600-7600
                                         dbirk@eimerstahl.com

                                         *Attorneys for Defendant Coinbase, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2023, I caused the foregoing Coinbase, Inc.'s Notice of Motion and Motion to Stay Proceedings Pending Arbitration; Memorandum of Points and Authorities in Support Thereof to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all registered counsel of record.


Dated: August 4, 2023                                         /s/ *Robert E. Dunn*
                                                             Robert E. Dunn